**Elijah WRIGHT, Appellant,**

v.

**MARYLAND PENITENTIARY, STATE OF MARYLAND, Appellee.**

**No. 12942.**

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1970.

Decided June 23, 1970.

Robert E. Cahill, Baltimore, Md. (Court-assigned counsel) for appellant.

Alfred J. O'Ferrall, III, Asst. Atty. Gen., of Maryland (Francis B. Burch, Atty. Gen. of Maryland, on brief) for appellee.

Before BRYAN, CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

Elijah Wright appeals from the denial of his federal petition for a writ of habeas corpus. He asks that we reverse the district court and order that the writ issue conditionally—unless Maryland will credit the time he was incarcerated before trial against his state sentence. Because Wright must further exhaust his state remedies, we remand to the district court with instructions.

I.

On December 18, 1964, the police arrested Wright and charged him with murder. Two years and six weeks later, on January 31, 1967, a jury convicted him of murder in the second degree. Part of the delay between his arrest and conviction occurred when Wright elected to have his first indictment declared void under Schowgurow v. State of Maryland, 240 Md. 121, 213 A.2d 475 (1965).[1] An even greater delay was occasioned by Wright's plea of "not guilty by reason of insanity," which required physical and mental examinations spanning more than eleven months.

The state trial judge sentenced Wright to eighteen years, the maximum then provided by Maryland law for his crime. The judge refused to credit the time Wright spent in pretrial custody against his sentence. Wright appealed to the Maryland Court of Special Appeals on

1. *Schowgurow* held certain provisions of the Maryland constitution in violation of the fourteenth amendment because they required belief in God as a qualification for jury service.

this issue, but on December 20, 1967, that court affirmed the trial judge's denial of credit. *Wright v. State of Maryland,* No. 40 September Term, 1967 (Unreported Per Curiam, December 20, 1967). The Maryland Court of Appeals denied certiorari on April 22, 1968.

■ Wright filed a federal petition for habeas corpus on May 1, 1968. Initially, the district court denied relief without a hearing, but subsequently granted a motion for reconsideration and ordered the attorney general of Maryland to show cause why Wright's petition should not be granted. After Maryland had answered the order to show cause, the district court again denied Wright's petition. In the district court's view Wright was challenging the length of his state sentence, and it is well established that sentences within state statutory limits present no federal question. E.g., *United States ex rel. Long v. Pate,* 418 F.2d 1028 (7th Cir. 1969); *Stevens v. Warden, Md. Pen.,* 382 F.2d 429 (4th Cir. 1967), cert. denied, 390 U.S. 1031, 88 S.Ct. 1423, 20 L.Ed.2d 288 (1968). Since Maryland law does not presently require a sentencing judge to give credit for time spent in jail prior to trial, *State of Maryland v. Ewell,* 234 Md. 56, 198 A.2d 275 (1964); *Hirons v. Warden, Md. Pen.,* 209 Md. 622, 120 A.2d 203 (1956); *Hands v. Warden, Md. House of Corrections,* 205 Md. 642, 109 A.2d 51 (1954); *Williams v. State of Maryland,* 2 Md.App. 170, 234 A.2d 260 (1967); but see *Jenkins v. Warden, Md. Pen.,* 4 Md.App. 629, 244 A.2d 468 (1968); *Reeves v. State of Maryland,* 3 Md.App. 195, 238 A.2d 307 (1968), the district court reasoned that Wright's sentence was within permissible state limits. The district court quoted a statement from the Maryland Court of Special Appeals' opinion in Wright's case, reading: "Much of the time between arrest and trial was consumed by physical and mental examinations made on behalf of Wright." The district court quoted this statement to distinguish *Reeves v. State of Maryland,* 3 Md.App. 195, 238 A.2d 307 (1968), in which the Maryland Court

of Special Appeals held that a sentence imposed following a second trial must include credit for time served under the original sentence. *Reeves,* however, specifically refrained from overruling *Williams v. State of Maryland,* 2 Md. App. 170, 234 A.2d 260 (1967), in which a prisoner had requested, and been denied, credit against his sentence for time served prior to trial. Instead *Reeves* reaffirmed the *Williams'* holding as appropriate under the "circumstances of that case." 3 Md.App. at 204, 238 A.2d at 313 n.5. Those "circumstances" included a statement in *Williams* to the effect that a portion of the time spent in jail before trial was attributable to the fact that the prisoner "chose to exercise his right to move for the dismissal of the original indictments in the case, * * * *" 2 Md.App. at 176, 234 A.2d at 264. *Williams* thus implied that a prisoner is not entitled to credit against his sentence for time in pretrial custody, if the time is spent exercising state-granted rights. Since the Maryland court made a similar statement in denying Wright's appeal, the district court apparently believed *Williams* was dispositive of Wright's contentions. See also *Jenkins v. Warden, Md. Pen.,* 4 Md.App. 629, 244 A.2d 468, 469 n. 4 (1968).

**II.**

Wright asserts that unless Maryland gives him credit for the time he spent in pretrial custody it is effectively imposing a sentence greater than the maximum allowed by state law. This arguably violates the Constitution in two ways. First, it may constitute multiple punishment for a single offense, thereby, offending the double jeopardy clause of the fifth amendment, which is enforceable against the states through the due process clause of the fourteenth amendment. See *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Secondly, it may be an unjustifiable conditioning of Wright's pretrial prerogative to challenge his first indictment and explore an insanity defense; if so, the unreasonable state condition violates the

**1104**

due process clause of the fourteenth amendment. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

In North Carolina v. Pearce, *supra,* the Supreme Court held that

the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully "credited" *in imposing sentence upon a new conviction for the same offense.* (Emphasis added).

395 U.S. at 718–719, 89 S.Ct. at 2077. The Court also promulgated a rule to prevent the imposition of more severe sentences upon reconviction after a new trial in most cases. No harsher sentence may be imposed unless in the record there "affirmatively appear" reasons for harsher punishment, "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081. The reason for this rule is to avoid a chilling effect on the exercise of basic constitutional liberties. "[D]ue process * * * requires that a defendant be freed of apprehension of * * * a retaliatory motivation on the part of the sentencing judge." North Carolina v. Pearce, 395 U.S. at 725, 89 S.Ct. at 2080 (1969); See Van Alstyne, In Gideon's Wake; Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965); Note, The Chilling Effect in Constitutional Law, 69 Colum.L.Rev. 808 (1969); Note, Unconstitutional Conditions, 73 Harv.L.Rev. 1595 (1960); Comment, Another Look at Unconstitutional Conditions, 117 U.Pa.L.Rev. 144 (1968). See also Note, The Unconstitutionality of Plea Bargaining, 83 Harv. L.Rev. 1387 (1970).

Wright clearly raises substantial constitutional questions under the *Pearce*

decision. See United States v. Jackson, 390 U.S. 570, 582, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Van Alstyne, In Gideon's Wake; Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965); Note, The Chilling Effect in Constitutional Law, 69 Colum.L.Rev. 808 (1969); Note, Unconstitutional Conditions, 73 Harv.L.Rev. 1595 (1960); Comment, Another Look at Unconstitutional Conditions, 117 U.Pa. L.Rev. 144 (1968). But see Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (decided May 4, 1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (decided May 4, 1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (decided May 4, 1970); Gremillion v. Henderson, 425 F.2d 1293 (5th Cir. 1970). See also Note, The Unconstitutionality of Plea Bargaining, 83 Harv.L.Rev. 1387 (1970). But Maryland argues that denying credit for pretrial incarceration substantively differs from denying credit for time served between trials. The attorney general of Maryland argues that denying credit to Wright cannot be deemed multiple punishment, since "[t]wo punishments are not meted out here, as is the circumstance where a defendant is convicted, sentenced, and then wins a retrial and must be again convicted and sentenced." Because Wright was effectively a nonbailable offender, he reasons that there is a distinction between one who is denied bail because he is indigent and Wright, who was not legally entitled to bail. He suggests that indigency may not be a valid state reason for denying a prisoner credit for pretrial incarceration, but being a nonbailable offender is.

Although the constitutional issues in Wright's case are substantial, the Maryland appellate courts have had no opportunity to consider them in light of *Pearce.*[2] As a general rule, state courts

2. The Maryland Court of Special Appeals filed its opinion on December 20, 1967, and the Maryland Court of Appeals denied certiorari on April 22, 1968. *Pearce* was not decided until June 23, 1969. We have found no case decided subsequent to *Pearce* in which the Maryland courts have considered issues similar or identical to the ones before us here.

should have an opportunity to apply a recent change in constitutional law to a prisoner's case, when the change was effectuated by a Supreme Court decision rendered after the state courts have last considered the case. James v. Copinger, 428 F.2d 235 (4th Cir. 1970); Ney v. Oberhauser, 419 F.2d 828 (9th Cir. 1969); Subilosky v. Massachusetts, 412 F.2d 691 (1st Cir. 1969); Boyer v. City of Orlando, 402 F.2d 966 (5th Cir. 1968); Pate v. Holman, 343 F.2d 546 (5th Cir. 1965); United States ex rel. Walker v. Fogliani, 343 F.2d 43 (9th Cir. 1965); Miller v. Gladden, 341 F.2d 972 (9th Cir. 1965); Blair v. California, 340 F.2d 741 (9th Cir. 1965); Pennsylvania ex rel. Raymond v. Rundle, 339 F.2d 598 (3rd Cir. 1964); Donnell v. Nash, 323 F.2d 850 (8th Cir. 1963), cert. denied, 376 U.S. 924, 84 S.Ct. 686, 11 L. Ed. 619 (1964); Hunt v. Warden, Md. Pen., 335 F.2d 936 (4th Cir. 1964); Mahurin v. Nash, 321 F.2d 662 (8th Cir. 1963), cert. denied, Mahurin v. Carter, 379 U.S. 979, 85 S.Ct. 682, 13 L.Ed.2d 569 (1965); Comment, Habeas Corpus— Effect of Supreme Court Change in Law on Exhaustion of State Remedies Requisite to Federal Habeas Corpus, 113 U.Pa.L.Rev. 1303 (1965). But see Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1099–1102 (1970). See also In Re Whittington, 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625 (1968); Strouth v. Peyton, 404 F.2d 537 (4th Cir. 1968).

■ We recently had occasion to apply this rule to another case in which a *Pearce* issue was raised. In James v. Copinger, 428 F.2d 235 (4th Cir. 1970), the issue was whether four prisoners had been coerced into abandoning their state appeals by fear of receiving a harsher sentence upon retrial and reconviction. This issue was derived from the *Pearce* stricture against imposing penalties on defendants who successfully pursue a statutory right to appeal. See 395 U.S. at 724, 89 S.Ct. 2072. We felt that the states should have the first opportunity to decide the factual and legal issues involved in *James*. There-

fore, we returned the petitioners to the state courts for further exhaustion, since they had never presented their *Pearce* claims to the states, and since *Pearce* had been decided after the states had last considered the issues raised in their cases. We believe the same principle should control here.

■ One limitation on this rule of exhaustion is that there must exist an effective state remedy for the prisoner. An important aspect of the limitation, in turn, is the requirement that the state courts be amenable to changing constitutional principles. For comity will not support further exhaustion in light of recent Supreme Court decisions if the state courts have traditionally refused to retreat from principles that conflict with current constitutional doctrine. See Comment, Habeas Corpus—Effect of Supreme Court Change in Law on Exhaustion of State Remedies Requisite to Federal Habeas Corpus, 113 U.Pa.L.Rev. 1303 (1965). Maryland's court decisions clearly show a willingness to adjust state law to conform with contemporary constitutional decisions of the Supreme Court. For example, in Schowgurow v. State of Maryland, 240 Md. 121, 213 A. 2d 475 (1965), the Maryland Court of Appeals held that a provision of the Maryland constitution requiring belief in God as a qualification for service on grand and petit juries contravened the fourteenth amendment. *Schowgurow* was decided in response to the constitutional doctrine that discriminatory religious requirements violate the due process clause of the fourteenth amendment. See Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). Furthermore, in Reeves v. State of Maryland, 3 Md.App. 195, 238 A.2d 307 (1968), discussed above, the Maryland Court of Special Appeals held that failure to give a prisoner credit for time spent in jail under his first sentence would be violative of the Maryland constitution and a state legislative mandate, when the result would be to impose a sentence of twenty-six years in the face of a statute limiting, the sentence to

twenty years. *Reeves* was decided February 19, 1968, prior to *Pearce*, but subsequent to this circuit's decision in Patton v. North Carolina, 381 F.2d 636 (4th Cir. 1967). Decisions such as these demonstrate that Maryland is sensitive to the constitutional rights of state prisoners. Thus, we perceive no valid reason why we should not defer to our sister courts whose primary responsibility it is to implement the Constitution with respect to state prisoners.

On remand the district court will enter an order affording Wright a reasonable opportunity, not exceeding ninety days, to seek relief under the Maryland Post Conviction Procedure Act for determination of whether he must, under *Pearce*, be given credit against his sentence for time spent in jail prior to his conviction. If Wright makes no such application within the prescribed 90 days, the district court should dismiss his petition.

Reversed and remanded.