**Harvey CULP, Petitioner,**

v.

**V. Lee BOUNDS and the State of North Carolina, Respondents.**

**Harvey CULP, Petitioner,**

v.

**David P. HENRY, Administrator, Central Prison, and State of North Carolina, Respondents.**

**Civ. A. Nos. 2599, 2645.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

April 5, 1971.

George S. Daly, Jr., Charlotte, N. C., for petitioner.

Jacob L. Safron, Asst. Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for respondents.

McMILLAN, District Judge.

Petitioner, Harvey Culp, is presently detained at North Carolina Central Prison in Raleigh serving two consecutive sentences of ten (10) years for felonious breaking and entering and felonious larceny imposed at the September 2, 1968, Schedule "D", Regular Criminal Session of the Superior Court of Mecklenburg County upon his conviction by a jury. Petitioner appealed his conviction to the North Carolina Court of Appeals, which found no error, State v. Culp, 5 N.C.App. 625, 169 S.E.2d 10 (1969). Subsequently, Culp petitioned the North Carolina Supreme Court for a writ of certiorari which was denied, State v. Culp, 275 N.C. 596, 169 S.E.2d 10 (1969). Culp now petitions this court, in two separate petitions which were consolidated by order of this court filed April 9, 1970, for a writ of habeas corpus, alleging the following as grounds for relief:

(1) That certain questioning of the petitioner by his trial counsel in the presence of the jury denied the petitioner his right "to remain off the witness stand";

(2) That the trial judge's charge to the jury denied him a fair trial because (a) the trial judge instructed the jury that they should "not consider any charge of receiving stolen goods against petitioner" and (b) the trial judge referred to petitioner by his alias on several occasions during the charge; and

(3) That the petitioner is entitled to credit for time spent in jail awaiting trial.

ALLEGATION ONE: Petitioner claims that he was prejudiced when his counsel, in the presence of the jury, questioned him as to whether he [the petitioner] wanted to take the witness stand. While the North Carolina Court of Appeals' opinion recognizes that "the better procedure would have been to have this statement placed in the record outside the hearing of the jury" (5 N.C.App. at 628, 169 S.E.2d at 12), that court held that any possible prejudicial effect to the petitioner of the questioning was cured by the trial judge's charge which fully instructed the jury not to consider the fact that the petitioner did not testify.

This court has examined the trial judge's charge and agrees with the conclusion of the state court that the charge effectively cured this error. Moreover, in light of the overwhelming evidence presented against the petitioner at his trial, this error, if it were error, was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

ALLEGATION TWO: A. Petitioner was originally indicted for three crimes: felonious breaking and entering, felonious larceny, and receiving sto-

len property. He has never been tried for receiving stolen property. At petitioner's trial, the trial judge during his charge erroneously read the indictment charging petitioner with receiving stolen goods. The North Carolina Court of Appeals found that this error was inadvertent and was cured by the trial judge's subsequent instructions to the jury when he told them not to be confused by his earlier mistake and when he reread the applicable indictments. This disposition seems clearly correct. Few, if any, trials are completely error free, and the inadvertent mistake of the trial judge which was later corrected does not provide a claim of constitutional scope in the circumstances of this case. "Normally * * * instructions to the jury in state trials are matters of state law * * * (and) only in circumstances impugning fundamental fairness * * * (is) a federal question * * * presented." Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir., 1960).

■ B. Petitioner also alleges error because the trial judge in reading the indictments and elsewhere in his charge referred to Culp by his alias. The North Carolina Court of Appeals, in considering this claim, held that while the use of alias in a jury charge might in certain circumstances be prejudicial, under the facts of Culp's case, where the identity of the defendant was not in doubt, it had not been prejudicial. This court concludes that the use of petitioner's alias, if it were error, was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726 (1969).

ALLEGATION THREE: Culp contends that he is entitled to credit for time spent in jail prior to commitment. Petitioner was given the maximum statutory sentences (ten years on each crime) upon his conviction of felonious breaking and entering and felonious larceny. See, N.C.G.S., §§ 14-54, 14-70, and 14-2. Petitioner was arrested on August 2, 1968, and his commitment was issued September 12, 1968. Apparently petitioner spent that entire forty-day period in custody and now seeks credit for that time.

■ Respondents contend that since Culp has failed to exhaust available state remedies with respect to this particular allegation, this court lacks power to consider petitioner's claim. While exhaustion of state remedies is normally a prerequisite to federal court consideration of habeas corpus claims, it has been held that where proceeding in the state courts would be ineffective, the exhaustion requirement is satisfied. 28 U.S.C. § 2254 (b); Evans v. Cunningham, 335 F.2d 491, 493 (4th Cir., 1964); Ralph v. Warden, 438 F.2d 786 (4th Cir. 1970) (footnote 1).

The leading case in North Carolina dealing with credit for time served before commitment is State v. Virgil, 276 N.C. 217, 172 S.E.2d 28 (1970). In *Virgil*, the defendant was in custody from February, 1963, until March, 1965, when, in his third trial, he was convicted and committed. Defendant's first trial ended in a mistrial; his second trial resulted in a conviction but was reversed on appeal. In the third trial, defendant was convicted of non-burglarious breaking and entering with intent to commit a felony. He was sentenced to a term of nine to ten years. (The maximum penalty for this crime is ten years. See, N.C.G.S., § 15-54.) No credit was given for the more than two years that defendant had already spent in jail. In a 5/2 decision (with Chief Justice Bobbitt and Justice Sharp dissenting) the North Carolina Supreme Court held that the state did not have to credit Virgil for time spent in jail before commitment.

The *Virgil* case is factually indistinguishable from petitioner's situation here. The essential question in each case is whether the time a prisoner spends in custody prior to trial when added to the sentence to be served upon commitment can total *more* than the statutory maximum punishment for the crime in-

volved.[1] Since this question was clearly (and recently) decided in *Virgil*, petitioner's recourse to the state courts would be ineffective and he has thus exhausted state remedies.

■ North Carolina's failure to give Culp credit for time served before trial where petitioner has received a maximum sentence violates the Constitution in two ways. First, it constitutes multiple punishment for a single offense, thereby offending the double jeopardy clause of the Fifth Amendment which is applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Second, the fact that only those accused who are unable to raise bail are subjected to extra pre-trial incarceration when their prison time exceeds the statutory maximum (as with Culp) is an invidious discrimination against the poor in violation of the equal protection clause of the Fourteenth Amendment. See, e. g., Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, (1963); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L. Ed.2d 130 (1971).

In North Carolina v. Pearce, 395 U.S. 711, 718–719, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held:

"  *  *  * [T]he constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense  *  *  *"

The *Pearce* rationale, applied to include the facts of this particular case, suggests that Culp should be given credit for time spent in custody prior to commitment where he has been given a maximum sentence. Pre-trial detention is nothing less than punishment. An unconvicted accused who is not allowed or cannot raise bail is deprived of his liberty. His incarceration is indistinguishable in effect from that of one, such as Pearce, who is retried after obtaining post-conviction relief. In both instances, the power of the state has been utilized to punish the complainant. Fundamental notions of fair play as well as the double jeopardy clause require that Culp receive credit for pre-commitment incarceration. See also, Wright v. Maryland Penitentiary, 429 F.2d 1101 (4th Cir., 1970) and Wilson v. North Carolina, 438 F.2d 284 (4th Cir., 1971).

Alternatively, the state's refusal to give Culp credit for pre-trial detention is an unconstitutional discrimination on the basis of wealth prohibited by the Fourteenth Amendment. As outlined above, wealthy defendants (except where no bail is allowed) are able to remain out of prison until conviction and sentencing; the poor stay behind bars. While such a situation may often be compelled by the present (especially state) bail procedures, it should not be compounded by refusal to credit prisoners in Culp's situation with time incarcerated prior to trial and commitment. Such a distinction, which, in effect, provides for differing treatment on the basis of wealth, is unconstitutional absent some "compelling governmental interest." See, McDonald v. Board of Election Commissioners of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

The situation presented here presents no such compelling state interest. Culp's plight is distinctly different from that of one who is unable to make bail and is then acquitted. In the case of the latter, the Eighth Amendment provides, in or-

---

1. This court assumes, without deciding, that where the time spent in custody before commitment when added to the sentence given after trial is *less* than the statutory maximum, no constitutional issue is presented. In that situation, this court, in view of *Virgil* and decisions elsewhere, is reluctantly inclined to indulge the fiction that the trial judge who imposes sentence has given the defendant credit for time served before commitment. See the order in Withers v. North Carolina, Civil No. 2731 (W. D.N.C., January 13, 1971) and cases cited therein.

der to insure presence at trial, that bail (which is not excessive) may be required. See, Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1954). While presence of a defendant at his trial is arguably an interest sufficient to overbalance those (hopefully) few who are unable to make bail and are later acquitted, there is no such balancing of interests present in petitioner's situation. The North Carolina Legislature has decided the maximum penalty to be meted out for Culp's crimes, and there is no reasonable interest to be served in requiring incarceration for any period longer than the statutory maximum.[2]

It is, therefore, ordered, that petitioner be given full credit for time spent in custody before commitment, and that all other claims for relief be, and they hereby are denied.

The petitioner is advised that he may appeal *in forma pauperis* from this *final order* by forwarding a written notice of appeal to the Clerk of the United States District Court, Post Office Box 1266, Charlotte, North Carolina 28201. Said *written* notice of appeal must be *received* by the Clerk within thirty (30) days from the date of this final order and may be filed without the prepayment of costs or giving security therefor. The court declines to issue a certificate of probable cause.

The Clerk is directed to transmit by mail copies of this order to the petitioner; to the Attorney General of North Carolina; to the director of the prison system of North Carolina; and to the superintendent or officer in charge of the institution at which the petitioner is presently confined.

---

2. It should be pointed out that a statute has been drafted for presentation to the North Carolina Legislature which would prospectively eliminate the problem under consideration in this case. The tentative first draft of the statute reads, in pertinent part, as follows:

"§ ——. *Credit on sentence awaiting trial.*—Any person sentenced by any court to a term of confinement to be served in jail or under the Department of Correction for the commission of a crime, or for default in the payment of a fine, shall have deducted from such term all time actually spent in jail or in the custody of the Department of Correction and/or all time spent in any mental institution for examination purposes or treatment prior to trial, and it shall be the duty of the court when entering the final order in such case to provide that said person shall be given credit toward the completion of his sentence for the time spent in custody. Provided, however, if said person is in custody by virtue of a pre-existing sentence or sentences he is not entitled to receive credit under this section.

"For purposes of this section, a person released on bail pending trial is not in custody and is not entitled to credit. No credit shall be given to any person who shall escape from custody pending trial.

"This provision shall apply to all trials commenced after the ratification of this section."